Cubia, per
Colcock, J.
The important question submitted in this case is, whether, where an executor receives money from the debtors of his testator, he is to be considered as a debtor in the same degree as those from p whom he received the money, and this ato the prejudice °f his other creditors'? I take it for granted that it is a well established principle of abstract justice, that every .. . , J . . . , , creditor is equally entitled to the payment of his debt *475 out of the estate of his debtor, and that the Court of Equity, as far as they are permitted to do so, act on that principle. But the common law does allow a debtor voluntarily to give a preference by mortgage or judgment to any particular creditor whom he may be disposed to fa vour ; and it also permits the vigilant creditor to obtain „ - i „r. ... a preference against the wish of his debtor, by obtaining a judgment and execution, and thus creating a lien on the whole of his estate. The case of Gadsden v. Lord, referred to in the argument, and the subsequent cases decided on the authority of that case, do certainly seem to support the position contended for by the complainant’s counsel, that the estate of Darby should be considered as indebted by bond for the money received by Gibson, and as indebted on judgment for that received from Car-rendiffer. But after an attentive examination of the subject and a reference to authorities, we are constrained to differ from the highly respected and distinguished Chancellors by whom those cases were decided. But for the positive enactments of the law, one creditor would have as just and equitable a right to the payment of this debt as another. And further, it is a rule in equity, that where one of two innocent persons must suffer, he who has reposed the greatest confidence should bear the loss. Now, from this principle it would seem, so far from the representatives of an estate of which one has been an executor being favoured, the general creditors of such person should take his estate in preference to them. For by the testator’s reposing such confidence as to put his whole estate at the disposal of one executor, he enables him to impose upon the community. If a man possessed of a large fortune be left executor to another, who was also possessed of a large estate, the executor may keep his own estate unimpaired in the eyes of the community, by using the money of his testator, and obtain credit on the faith of property which is thus secretly (as to the *476 community) embarrassed. Why is it that property is suffered to be encumbered by the operation of a judgment or recorded mortgage ? Because there are public records to which all have access, and of which every attentive and vigilant man may have notice. But what degree of human foresight or penetration could dive into these secret liens created by a violation of trust reposed.
But ra-mon law a debtor may prefer a ccedltor-
A breach of trust only constitutes a simple contract debt.
So where an executor receives money on a bond or judgment and retains it, it stands against him only as a simple contract debt.
That a breach of trust constitutes a simple contract debt (unless under some peculiar circumstances) seems to have been the well established doctrine of both the Courts of Law and Equity. In 1 Term Rep. 42, the position was maintained, and in Vernon v. Vaudry, 2 Atk. 119, and Cox v. Bateman, 2 Ves. 19, it is recognized as the doctrine of the Court. Indeed it is not now disputed, except so far as the case of Gadsden v. Lord may affect it, and I think that case must be considered as resting on its own peculiar circumstances. And such seems to have been the opinion of the Court of Equity in the case of the Executors of Mason v. Executor of Man, 3 Desaus. Rep. 122. Chancellor De Saus-sube observes, that on an examination of the case of Gadsden v. Lord, and Buist v. Perry, it did not appear to him that the Court intended to lay it down as a principle, that in all cases where executors have received and misapplied money of their testator due on judgment or bond, that they should be liable as judgment or bond debtors. The question did not appear to have arisen solely between conflicting creditors. And he adds, “ if it had, it seems to me the Court acted under the peculiar circumstances of those cases.” Whatever sums, therefore, may have been received by the executor in this case are to be charged on his estate as simple contract debts.
On the second ground, although this Court does not concur with the Chancellor as to the ground on which he rests the liability of the intestate, yet it is clear that his estate must be answerable for the full value of the *477 two negroes sold. The Chancellor makes him liable on the ground of laches, and for a violation of the directions of the will. Now, from the evidence adduced to the Commissioner, there was no such laches as would make an executor liable. And as to the four hundred dollars due he cannot be said to have violated the directions of his testator, for he could not invest it in bank stock until he had received it; and his neglect to vest one sum, which he had received, would certainly not make him liable for another sum which he had not received. It may be meant, as was suggested in the argument, that the executor should not have sold on a credit. Now, I do not perceive that there is any thing in the will to restrain the executor from the exercise of his discretion in this respect ; nor is there any thing in the evidence to shew that the discretion was improperly exercised. But the executor sold two of his own negroes, who were very inferior ones, with the two of the estate, who were very valuable tradesmen; he received five hundred dollars in cash, and the bond of Gibson for fifteen hundred, on which eleven hundred have been paid. Now, it is a great principle, familiar both at law and in equity, that if a man, having undertaken to keep the property of another distinct, mixes it with his own, the whole must be taken to be the property of the other, until the former puts the ... r subject under such circumstances that it may be guished as satisfactorily as it might have been before that unauthorized mixture upon his part. Lupin v. White, 15 Ves. 436. Itdoes not appear what was the value of the negroes belonging to the executor, nor whether the ere-dit given extended to their whole value, though the dence offered may secure him from the full operation of the rule. For it is in proof that, a shprttime before this sale, a bricklayer of the estate was sold for $800. king that as the value, the two must have been worth $1600, which is the sum received by him, .and for which *478 he must be answerable, with interest on the different amounts from the time they were received, taking it for granted that the cash received was in part for the negroes of the estate, as the contrary has not been shewn. It is or(jerecj anc[ (jecree(jj that the accounts of the parties be adjusted on the principles here laid down, and the decree of the Chancellor so far as the same is repugnant thereto be reversed.
If a man, k?ep P™Peity of another, it with must* ^ken t0 perty^f the theformef such ch'cum-will render distinc-factory as it" was befol'e'

*478
Decree modified.